# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| SHAFI A., by and through his next friends, | § | |
| MOHAMMED & SHAMFIN A. | § | |
| | § | CASE NO. 4:15-CV-599 |
| v. | § | Judge Mazzant |
| | § | |
| LEWISVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court are Defendant's Motion for Judgment on the Administrative Record (Dkt. #9) and Plaintiffs' Motion for Judgment on the Administrative Record (Dkt. #10). The Court, having reviewed the pleadings and administrative record, finds that Defendant's motion should be granted and Plaintiffs' motion should be denied.

## BACKGROUND

At the time of the hearing before the Texas Education Agency Special Education Hearing Officer (the "SEHO" or "Hearing Officer"), Shafi A. was a third grade student at Heritage Elementary School in the Lewisville Independent School District ("LISD" or the "District"). Shafi A. has the disability of autism. A.R. at 418. He shows considerable difficulties and delay relative to his peers with respect to socialization and pragmatic language skills. A.R. at 326–28. Shafi A. has problems using inappropriate language and profanity A.R. at 380.

On August 23, 2013, LISD held Shafi A.'s transfer Admission, Review, and Dismissal ("ARD") committee meeting. Shafi A.'s parents received a copy of the Procedural Safeguards at this meeting. A.R. at 945. On September 26, 2013, LISD conducted a Full Individual Evaluation ("FIE") for Shafi A. and confirmed that he met eligibility requirements for special education and related services as a student with autism and a speech impairment. A.R. at 967, 988. Specifically,

the LISD evaluators found Shafi A. tested in the fourth percentile for pragmatic language proficiency and warranted a descriptive rating of "poor" for his age. A.R. at 316. The evaluators further determined that Shafi A. had a significant delay in pragmatic language skills and displayed many characteristics commonly associated with an autism spectrum disorder. A.R. at 327. The evaluators concluded that Shafi A. is socially motivated but tends to have difficulty with social reciprocity, which adversely affects his educational performance. A.R. at 328. Shafi A.'s parents did not request any component of an evaluation be included as part of the FIE. A.R. at 1957.

In its Recommendations section, the FIE recommended various strategies for the purpose of promoting socialization and pragmatic language skills. A.R. at 328–29. These recommendations included "pair[ing] with prosocial peers for peer partnering activities to provide Shafi A. with opportunities to engage in positive peer interactions with peers who model desired on task and prosocial skills" and "[d]evelopment of pragmatic language skills of referencing the speaker, recognizing facial expressions, responding with on topic commenting and questioning during conversations, and maintaining whole body attention and participation in group interactions through turning toward speakers and group members while seated." A.R. at 328. The FIE did not provide any guidance regarding duration or intensity of these services. A.R. at 328–29.

On October 3, 2013, Shafi A.'s ARD committee reviewed his FIE. A.R. at 992. Neither Shafi A.'s parents nor Shafi A.'s advocate Dr. Laurie Harrier, a Licensed Specialist in School Psychology ("LSSP"), voiced any concern regarding the FIE or requested further evaluation. A.R. at 1902–03. The ARD committee conducted a Functional Behavior Assessment ("FBA") of Shafi A.'s off-task behaviors and agreed to address them through accommodations and goals.

A.R. at 1003. At this meeting, the ARD developed Shafi A.'s Individualized Education Program ("IEP"), which included goals to address autism behavior, social skills training, classroom accommodations, assistive technology to address sensory concerns, parental training at home, speech therapy, and placement in the general education classroom with inclusion support. A.R. at 999–1019. Shafi A.'s parents reached a consensus with the ARD committee and did not voice any concerns regarding the IEP developed for Shafi A. A.R. at 1021, 1966. In November 2013, the District agreed to change Shafi A.'s teacher at the request of his parents. A.R. at 1027, 1030.

On January 17, 2014, Shafi A.'s ARD committee met to discuss Shafi A.'s off-task behavior throughout the fall semester, which included an inappropriate drawing, two incidences of cursing, and one incident of inappropriate attention-seeking behavior. A.R. at 1043. The ARD discussed whether an FBA or Behavior Intervention Plan was needed, but decided to monitor Shafi A.'s behavior rather than conduct an FBA because Shafi A. was progressing and his behavior was not uncommon for a child of his age. A.R. at 1043. Shafi A.'s parents received Prior Written Notice and reached consensus with the ARD committee regarding this decision. A.R. at 1046, 1048.

On January 24, 2014, Shafi A.'s ARD committee and Shafi A.'s mother met and reached a consensus to add handwriting goals and occupational therapy to Shafi A.'s services. A.R. at 1051, 1054–58. In March 2014, Shafi A.'s mother voiced concern regarding Shafi A.'s behavior at home, but would not provide consent to the District for a counseling evaluation. A.R. at 1062, 1067, 1967–92. The District agreed to conduct an FBA instead. A.R. at 1062. Dr. Jane Jooste, the District's LSSP, also revised Shafi A.'s Safety Protocol. A.R. at 1073.

On May 8, 2014, Shafi A.'s parents wrote LISD requesting an Independent Educational Evaluation ("IEE") at the District's expense. The then Executive Director of Special Education,

Dr. Paula Walker, responded on May 23, 2014, approving an IEE for a full psychological evaluation. A.R. at 1116. The evaluation was to include an autism evaluation, a Cognitive Evaluation, an Academic Achievement Evaluation, an Adaptive Behavior Assessment, a full Speech and Language Evaluation, an Occupational Therapy Evaluation, an FBA, and an Assistive Technology Evaluation. *Id.* Dr. Walker provided Shafi A.'s parents with instructions, the District's IEE Operating Guidelines, a list of possible providers, and a copy of the Procedural Safeguards. A.R. at 1116–1143.

On June 3, 2014, the ARD committee met to discuss Shafi A.'s need for Extended School Year ("ESY") services. A.R. at 1074. The ARD committee recommended ESY services to prevent regression in speech and behavior; specifically, thirty minutes of speech therapy two days per week, thirty minutes of occupational therapy consultation, and ninety minutes of replacement behavior teachings two times per week. A.R. at 1075–76, 1085. The ARD committee also conducted an FBA to address Shafi A.'s inappropriate language and wandering, and developed a Behavioral IEP and safety protocol. A.R. at 1079–83. Shafi A's parents and advocate, Mara LaViola, participated in this meeting and requested that Shafi A.'s ESY services be provided with Shafi A.'s general education peers, but did not indicate a specific program. A.R. at 1085, 1721–22. The District agreed to look for summer programs. A.R. at 1085. On June 11, 2014, Dr. Walker contacted Shafi A.'s parents to inform them that her search did not produce any private or community program that had summer vacancy, but she would research any additional private program recommended by Shafi A.'s parents. A.R. at 1098. The District offered to provide funding for a program meeting Shafi A.'s ESY needs, but since Shafi A.'s parents never responded, the District prepared to provide Shafi A. with the ESY services recommended by his ARD committee. A.R. at 1722. Shafi A. never participated in ESY services

during the summer of 2014, which would have included Speech Language Pathologist ("SLP")-guided speech therapy or small group therapy. A.R. at 1101–04, 2006–12.

On June 30, 2014, Shafi A.'s father informed the District that he wanted the Ziggurat Group to conduct the IEE. A.R. at 1145. LISD contacted the Ziggurat Group that day and determined that their quoted price was $3,959 above the District's Maximum Fee Schedule. A.R. at 1159. 1171, 1174. Dr. Walker determined, through her years of experience, that this fee was excessive and informed the Ziggurat Group that LISD would be willing to pay $3,241 for the IEE. A.R. at 1170–71, 1159.

On July 2, 2014, Shafi A.'s father informed the District that he wished Julie Liberman to conduct the speech portion of the IEE. A.R. at 1152. On July 7, 2014, the District sent Ms. Liberman the District's Operating Guidelines and Maximum Fee Schedule. A.R. at 1154–59. LISD sets a maximum rate of $284.00 for a speech evaluation. A.R. at 822. Ms. Liberman responded that she was unable to conduct the IEE at the District rate. A.R. at 1163. Ms. Liberman charges $1,250.00 for her speech evaluations. A.R. at 1573. The District requested Ms. Liberman's credentials for fee negotiation purposes, but Ms. Liberman objected. A.R. at 1162, 1164.

On July 10, 2014, Shafi A.'s father emailed the District that "given the districts [sic] severely [sic] restriction on fees for the IEE . . . we see no other recourse than to pay for private IEEs and then seek reimbursement from the school district." A.R. at 1164. The District responded, indicating that Ms. Liberman had not provided her credentials and that negotiations with the Ziggurat Group were ongoing. A.R. at 1164. On July 14, 2014, Dr. Walker sent an email to Shafi A.'s father indicating that the District was still negotiating with the Ziggurat Group and that it would only pay for one speech evaluation. A.R. at 1160. Shafi A.'s father objected,

indicating he wanted two providers—Ms. Liberman and the Ziggurat Group. A.R. at 1166–67. On August 24, 2014, Dr. Walker contacted Ms. Liberman directly, explaining the District's cost criteria and indicating that the District would be open to consideration of unique issues when a fee exceeds the criteria. A.R. at 1175–76. Ms. Liberman responded, objecting to the District's cost criteria, but did not provide unique issues or her credentials. A.R. at 1176.

In the fall of 2014, Shafi A. returned to Heritage Elementary to start third grade. Ms. Liberman began her evaluation of Shafi A. at the request of Shafi A.'s parents. A.R. at 403. Ms. Liberman found Shafi A. had difficulties with pragmatic language and social skills. A.R. at 403–08. Ms. Liberman observed Shafi A. in the classroom and believed him to be off task. A.R. at 1589–90. Ms. Liberman considered it essential for Shafi A. to receive direct instruction concerning pragmatic language skills with a minimum of four sessions per week and further inclusion in a social skills group three times per week. A.R. at 409. Ms. Liberman also recommended direct training by an outside SLP. A.R. at 1593. Ms. Liberman found the LISD's FIE to be deficient in that it did not provide guidance with respect to the duration and frequency of services. A.R. at 1622–23. Ms. Liberman believed the IEP developed by LISD was delivering speech services at an inadequate frequency. A.R. at 1600–02.

Shafi A.'s ARD committee met for its annual meeting on October 2, 2014, to discuss Shafi A.'s progress. A.R. at 1206. Shafi A.'s parents brought their attorney to the meeting without notifying the District, so the ARD committee meeting was postponed to allow the District to have their attorney present. A.R. at 1208. At this meeting, Shafi A.'s advocate, Ms. LaViola, reported concerns regarding the measurability of the draft goals, which the District agreed to address via email. A.R. at 1246, 1975. Ms. LaViola neither followed up with the District regarding draft goals nor showed up to the rescheduled ARD committee meeting.

On October 15, 2014, the ARD committee meeting reconvened. A.R. at 1208. The committee reviewed Ms. Liberman's evaluation, which had been provided to the District the night before. A.R. at 1244. 1255–1266. Ms. Goodspeed, Shafi A.'s SLP disagreed with Ms. Liberman's evaluation for several reasons. First, Ms. Goodspeed disagreed with Ms. Liberman's recommendation for additional speech therapy because Shafi A. was making good progress with the current amount of therapy. A.R. at 2018–2021. Further, additional speech therapy would remove Shafi A. from the beneficial general education classroom. *Id.* Finally, Ms. Goodspeed noted that Ms. Liberman's test instrument was not standard and Ms. Liberman's own testing did not support her conclusion that Shafi A. had below-average speech skills. A.R. at 2023–24. Shafi A. scored in the average range for expressive and receptive language. *Id.* At this meeting, Shafi A.'s father expressed concerns, but would not consent to the ARD committee's recommendation of a counseling evaluation. A.R. at 1244, 1974. Ms. Persinger, Shafi A.'s special education teacher, reported that Shafi A. performed academically on grade level, was progressing academically, behaviorally, and socially, and had no behavioral incidents. A.R. at 1244–45. Shafi A.'s occupational therapist, Lynn McCoy, also reported that Shafi A. made great gains with his occupational therapy goals and handwriting skills. A.R. at 1245.

The ARD committee, Shafi A.'s father, and Shafi A.'s attorney worked together to revise each draft goal to make the goals more measurable. A.R. at 1227–32, 1249, 1975–77. The ARD committee also developed Shafi's IEP, which included goals to address social skills, pragmatic speech, and handwriting occupational therapy; a behavioral IEP; classroom accommodations, including a safety plan to address Shafi A.'s tendency to wander from his assigned area; assistive technology to address sensory concerns; parental training to address independence and behavior; social skills instruction; occupational therapy; speech therapy; and continuing placement in the

general education classroom with inclusion support. A.R. at 1217, 1224–25, 1227–32, 1236, 1242. Shafi A.'s father and attorney did not object to the revised goals, but indicated that they would need to discuss the IEP with Shafi A.'s mother to make sure she agreed with the IEP. A.R. at 1977–78. The ARD committee agreed to enter a ten-day recess and reconvene after Shafi A.'s parents had the opportunity to discuss the IEP. A.R. at 1978. Shafi A.'s parents agreed to meet on October 15, 2014, but cancelled the meeting. A.R. at 387. Shafi A.'s parents did not raise any concerns until the District received Shafi A.'s request for a Due Process Hearing on December 11, 2014.

Shafi A.'s parents directed the Ziggurat Group to evaluate their son. The Ziggurat Group believed it could not meet LISD's rate guidelines, so they charged Shafi A.'s parents $3,500.00 for the evaluation. A.R. at 1673. On November 21, 2014, the Ziggurat Group completed their evaluation of Shafi A. A.R. at 1267–1336. Dr. Grossman observed Shafi A.'s off-task behavior in the classroom. A.R. at 471–72. The Ziggurat Group concluded that Shafi A. needed more services than LISD was providing. A.R. at 516. Specifically, the Ziggurat Group recommended Shafi A. receive forty-five minutes to one hour of social understanding and adapting skills instructions per day. *Id.*

The Ziggurat Group reported that Shafi A.'s teachers tended not to recognize his autistic behavior. A.R. at 502, 1657–58. Dr. Grossman criticized LISD's practice of administering speech therapy sessions outside of Shafi A.'s classroom, claiming it is less effective than working on pragmatic language skills in a classroom of his peers. A.R. at 1344, 1652. Dr. Grossman included in his evaluation recommendations regarding appropriate responses to any suicidal thoughts or gestures because Shafi A. has expressed to his mother negative thoughts about his life and situation. A.R. at 527, 1656. The Ziggurat Group reached the conclusion that

LISD's FIE was deficient in that it did not comment on the duration or intensity of the services recommended. A.R. at 1663–64. The Ziggurat Group recommended more socialization services, at least forty-five minutes per day, than provided by LISD. A.R. at 516.

The District developed a side-by-side analysis of the District's FIE, the Ziggurat Group evaluation, and Ms. Liberman's evaluation to compare and contrast the findings and recommendations. A.R. at 1422–80. The ARD committee utilized this analysis to develop a new IEP. A.R. at 1915. Ms. Goodspeed recommended additional goals and objectives including an increase in speech therapy. A.R. 2026. Shafi A.'s mother participated in this meeting and did not request additions to or alterations of the proposed IEP. A.R. at 2027.

On December 11, 2014, Shafi A., by and through his next friends, Mohammed & Shamfin A. ("Plaintiffs") filed a request for a hearing before a SEHO. The hearing was held on March 6, 2015, and April 17, 2015. On June 5, 2015, the SEHO issued its decision, denying Shafi A.'s request for relief and dismissing all claims with prejudice (Dkt. #1, Exhibit A).

On September 3, 2015, Plaintiffs filed their complaint, appealing the SEHO's decision to this Court (Dkt. #1). On May 23, 2016, Defendant filed its Motion for Judgment on the Administrative Record (Dkt. #9). On June 20, 2016, Plaintiffs filed their response (Dkt. #12). On July 11, 2016, Defendant filed its reply (Dkt. #13). On July 20, 2016, Plaintiffs filed their sur-reply (Dkt. #15).

Also on May 23, 2016, Plaintiffs filed their Motion for Judgment on the Administrative Record (Dkt. #10). On June 20, 2016, Defendant filed its response (Dkt. #11). On July 11, 2016, Plaintiffs filed their reply (Dkt. #14). On July 25, 2016, Defendant filed its sur-reply (Dkt. #17).

## LEGAL STANDARD

This case arises under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400–1482. The IDEA's purpose is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living[.]" 20 U.S.C. § 1400(d)(1)(A).

States receiving federal assistance under the IDEA must: (1) provide a "free appropriate public education" ("FAPE") to each disabled child within its boundaries, and (2) ensure that such education is in the "least restrictive environment" ("LRE") possible. *Cypress–Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 247 (5th Cir. 1997); 20 U.S.C. § 1412(a)(1), (5). The FAPE provided must be developed to each disabled child's needs through an "individual education program" ("IEP"). *Michael F.*, 118 F.3d at 247; *see* 20 U.S.C. § 1414(d). In Texas, the committee responsible for preparing an IEP is known as an Admissions, Review, and Dismissal committee. *Michael F.*, 118 F.3d at 247.

"When a parent challenges the appropriateness of an IEP, a reviewing court's inquiry is two-fold." *Houston Indep. Sch. Dist. v. V.P.*, 582 F.3d 576, 583 (5th Cir. 2009). "The court must first ask whether the state has complied with the procedural requirements of the IDEA, and then determine whether the IEP developed through such procedures was 'reasonably calculated to enable the child to receive educational benefits.'" *Id.* at 583–84 (citation omitted). "If the court finds that the state has not provided an appropriate educational placement, the court may require the school district to reimburse the child's parents for the costs of sending the child to an appropriate private school or institution." *Id.* at 584 (citations omitted). "Reimbursement may be ordered only if it is shown 'that (1) an IEP calling for placement in a public school was

inappropriate under the IDEA, and (2) the private school placement . . . was proper under the Act.'" *Id.* (citation omitted).

The role of the judiciary under the IDEA is limited, leaving the choice of educational policies and methods in the hands of state and local school officials. *White v. Ascension Parish Sch. Bd.,* 343 F.3d 373, 377 (5th Cir. 2003) (citing *Flour Bluff Indep. Sch. Dist. v. Katherine M.,* 91 F.3d 689, 693 (5th Cir. 1996)). "Under the IDEA, a federal district court's review of a state hearing officer's decision is 'virtually *de novo*.'" *Adam J. v. Keller Indep. Sch. Dist.,* 328 F.3d 804, 808 (5th Cir. 2003). "The district court must receive the state administrative record and must receive additional evidence at the request of either party." *Id.* The court must reach an independent decision based on a preponderance of the evidence. *Houston Indep. Sch. Dist. v. Bobby R.,* 200 F.3d 341, 347 (5th Cir. 2000); *Michael F.,* 118 F.3d at 252. However, this requirement "is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist., Westchester County v. Rowley,* 458 U.S. 176, 206 (1982). Instead, "due weight" is to be given to the hearing officer's decision. *Id.* Thus, "courts must be careful to avoid imposing their view of preferable educational methods upon the States. The primary responsibility for formulating the education to be accorded a handicapped child, and for choosing the educational method most suitable to the child's needs, was left by the Act to the state and local educational agencies in cooperation with the parents or guardians of the child." *Id.* at 207.

The party seeking relief under the IDEA bears the burden of proof. *Schaffer v. Weast,* 546 U.S. 49, 62 (2005). Specifically, "a party attacking the appropriateness of an IEP established by a

local educational agency bears the burden of showing why the IEP and the resulting placement were inappropriate under the IDEA." *Michael F.,* 118 F.3d at 252.

## ANALYSIS

Plaintiffs contend that Defendant failed to provide Shafi A. with a FAPE. Specifically, Plaintiffs claim Shafi A.'s IEP was deficient because it failed to provide instructional services sufficient in duration, frequency, and intensity to prevent Shafi A. from regressing relative to his peers. If the sufficiency of the IEP is contested, the Court must assess the IEP by considering whether: (1) the program is individualized on the basis of the student's assessment and performance; (2) the program is administered in the least restrictive environment; (3) the services are provided in a coordinated and collaborative manner by the key "stakeholders'" and (4) positive academic and non-academic benefits are demonstrated. *Michael F*., 118 F.3d at 253. The educational program provided under the IDEA "need not be the best possible one, nor one that will maximize the child's educational potential; rather it need only be an education that is specifically designed to meet the child's unique needs, supported by services that will permit him 'to benefit' from the instruction." *Id*. at 247–48.

### *Michael F. Analysis*

<u>Whether Shafi A.'s IEPs Were Individualized</u>

Plaintiffs present no evidence that Shafi A.'s IEP was not individualized on the basis of his assessment and performance; rather, Plaintiffs disagree with the manner in which LISD addressed Shafi A.'s needs. In arguing that the first *Michael F.* factor has been satisfied, Plaintiffs allege LISD failed to provide sufficient duration and intensity measures for Shafi A.'s services, had inadequately trained staff, and did not utilize lunch and recess time for administering services. None of these arguments address whether Shafi A.'s IEP was

individualized on the basis of his assessment and performance. The administrative record contains ample evidence of LISD considering Shafi A.'s needs in formulating his IEP. In fact, Plaintiffs' own evaluations of Shafi A., conducted by Dr. Grossman and Ms. Liberman, reached similar conclusions as the District's FIE. A.R. at 328, 1597, 1663. The Court finds Shafi A.'s IEP was individualized on the basis of his assessment and performance.[1]

Plaintiffs further allege that LISD failed to provide appropriately measurable goals in its IEPs. Specifically, Plaintiffs argue the District's speech therapist measured progress not by reference to the number of successes, but rather in terms of the degree of prompt reduction achieved. This procedural violation claim does not entitle Shafi A. to relief unless it is paired with a deprivation of educational opportunity. *See Adam J. ex rel. Robert J. v. Keller Indep. Sch. Dist.*, 328 F.3d 804, 812 (5th Cir. 2003) (establishing that "procedural defects alone do not constitute a violation of the right to a FAPE unless they result in the loss of an educational opportunity"). The Court, having reviewed the administrative record and briefing of the parties, finds Plaintiffs have "not established that any procedural deficiency resulted in a loss of educational opportunity or infringed [Shafi A.'s] parents' opportunity to participate in the IEP process." *Id.* Further, the goals and objectives contained in Shafi A.'s IEP's are measurable, as evidenced by testimony at the due process hearing. A.R. at 1003, 1217, 1231, 1985–87. The Court finds Defendant complied with IDEA in setting measurable goals for Shafi A.

---

[1] Plaintiffs argue Defendant's FIE was deficient in that it did not give sufficient guidance as to the duration and intensity of Shafi A.'s speech therapy. But Plaintiffs have waived this argument as it was not introduced at the due process hearing. *See Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003). Further, Shafi A.'s private evaluator only stated that duration and intensity guides "would be helpful" because "[s]ometimes the people who do the evaluations are different . . . from the people who actually write the IEE [sic], the ARD document." A.R. at 1663. Four of the six individuals who completed Shafi A.'s FIE were members of the ARD committee and none of them made recommendations regarding duration and intensity. A.R. at 991, 1021. The Court finds Plaintiffs' duration and intensity argument both judicially estopped and without evidentiary support.

<u>Whether Shafi A.'s Services Were Administered in the Least Restrictive Environment</u>

Plaintiffs contend that LISD failed to administer Shafi A.'s program in the least restrictive environment in two respects. First, Plaintiffs contend LISD failed to provide speech therapy services in a naturalized environment during the school year. During the prehearing telephone conference, Plaintiffs' counsel represented to the SEHO that Shafi A.'s placement was not an issue except for ESY services. A.R. at 1534–35. The SEHO noted in his decision that Shafi A.'s "parents had no complaints about the issue of [LRE] except for the proposed [ESY] for 2014." Plaintiffs are judicially estopped from bringing LRE claims with respect to services during the standard school year because "the position of the party to be estopped is clearly inconsistent with its previous one," and the party "convinced the court to accept that previous position." *Hall*, 327 F.3d at 396 (citing *Ahrens v. Perot Sys. Corp.*, 205 F.3d 831, 833 (5th Cir. 2000)). Even if the issue were properly before the Court, the administrative record indicates that LISD administered Shafi A.'s IEP in the LRE. Shafi A. received instruction in the general education setting as well as pull out sessions.[2] Plaintiffs' own expert, Julie Liberman, recommended Shafi A. receive speech therapy and social skills training in the "therapy room, classroom, and/or in natural contexts such as recess, lunch, etc." A.R. at 1263. Plaintiffs' argument that Shafi A. did not receive services in the LRE is without adequate evidentiary support to overcome the deference afforded to a school district's professionals. *See T.C. v. Lewisville Indep. Sch. Dist.*, No. 4:13CV186, 2016 WL 705930, at *17 (E.D. Tex. Feb. 23, 2016)

---

[2] Plaintiffs allege the District erred in not utilizing lunch and recess for Shafi A.'s services. But the administrative record establishes that Shafi A. received social skills training on the playground, in the cafeteria, and on field trips. A.R. at 1769–71. Shafi A.'s SLP believed his direct speech therapy was best handled on a pull-out basis due to the progress he was making. A.R. at 2036.

(compiling cases indicating that deference should be given to a school district's professionals in considering whether a school district has complied with the IDEA).

Plaintiffs' contention that Shafi A.'s ESY services were not administered in the LRE is properly before the Court. Plaintiffs argue that LISD did not administer ESY services in the LRE because it did not offer ESY services to Shafi A. in a general education classroom. LISD did not have a general education program for Shafi A., but Defendant offered to place Shafi A. in a special education LISD classroom or pay for a private or community program with general education classes. LISD researched private and community programs for Shafi A. and explained to Shafi A.'s parents that no programs were available. Dr. Walker offered to investigate any other programs identified by Shafi A.'s parents, but none were suggested. The Court agrees with other courts that have determined, "even if a school district fails to place a disabled student in an ESY program in his LRE, the student still will not be entitled to reimbursement unless he finds a private alternative ESY placement, proves that alternative placement was appropriate, and proves that equitable considerations favor reimbursement." *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 167 (2d Cir. 2014) (citing *Florence Cty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 15–16 (1993); *Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 369–71 (1985)). The Court finds Defendant administered Shafi A.'s services in the LRE during the school year, and Plaintiffs failed to establish that Shafi A. was denied the opportunity to receive ESY services in the LRE.

Whether the Services Were Provided in a Coordinated and Collaborative Manner

Plaintiffs contend LISD failed to provide services to Shafi A. in a manner coordinated and collaborative with the key stakeholders. Specifically, Plaintiffs allege Defendant failed to act on parental concerns about the pragmatic language and socialization needs of Shafi A. The

administrative record indicates that Shafi A.'s parents did not make any request that was not addressed by the District at any of the ARD committee meetings they attended. The District changed Shafi A.'s teacher after his parents raised concerns, offered a counseling evaluation, conducted a Functional Behavior Assessment, and spent considerable time developing, reviewing, and revising Shafi A.'s goals in order to make them more measurable.

Plaintiffs contend Shafi A.'s services were not coordinated and collaborative with the key stakeholders because Shafi A.'s parents did not agree with the ARD committee's recommendations. But such disagreement "does not mean that [Shafi A.'s] services were not offered in a coordinated and collaborative fashion." *R.C. v. Keller Indep. Sch. Dist.*, 958 F. Supp. 2d 718. 736 (N.D. Tex. 2013). While the IDEA gives the parents the right to provide meaningful input, this right "is simply not the right to dictate the outcome and obviously cannot be measured by such." *White* 343 F.3d at 380. "If a student's parents want him to receive special education under IDEA, they must allow the school itself to reevaluate the student and they cannot force the school to rely solely on an independent evaluation." *Andress v. Cleveland Indep. Sch. Dist.*, 64 F.3d 176, 178 (5th Cir. 1995). A parent who disagrees with the school's evaluation has the right to have an independent evaluation conducted, and the evaluation must be considered by the school district. *Id*. The administrative record indicates that LISD reviewed and addressed the findings of Plaintiffs' private evaluators, who reached similar conclusions as to Shafi A.'s condition and needs. Thus, the Court finds Defendant provided services to Shafi A. in a manner coordinated and collaborative with the key stakeholders.[3]

---

[3] Plaintiffs also allege that LISD's staff had insufficient training. But the administrative record does not contain any evidence to support this claim. Plaintiffs paraphrase Dr. Grossman's testimony at the Due Process Hearing to claim Dr. Grossman believed Shafi A.'s educators were inadequately trained. But the portion of testimony referenced by Plaintiffs does not support the claim. Dr. Grossman observed that Shafi A.'s teachers were "not reporting a lot of symptoms of

<u>Whether Positive Academic and Non-Academic Benefits Were Demonstrated</u>

Plaintiffs contend LISD failed to provide Shafi A. with positive academic and non-academic benefits. Specifically, Plaintiffs allege LISD did not provide Shafi A. with the proper instructional services necessary to prevent the regression of his pragmatic language skills relative to his peers. Defendant offers evidence of Shafi A.'s success in the classroom by noting that Shafi A. received all As and Bs. Defendant also asserts Shafi A. progressed socially and behaviorally as evidenced by the IEP progress reports and discipline records. Conversely, Plaintiffs stress the importance of pragmatic language skills, but do not offer evidence as to how Shafi A. fell behind relative to his peers or otherwise rebut Shafi A.'s documented progress and successes in school. Even if Plaintiff were able to offer proof of Shafi A. falling behind his peers, the Fifth Circuit does not measure a student's progress by relation to the rest of the class, "but rather with respect to the individual student." *Bobby R.*, 200 F. 3d at 349. The administrative record clearly shows Shafi A. progressed academically, behaviorally, and socially throughout the District's implementation of his IEP. The Court finds Shafi A. demonstrated positive academic and non-academic benefits under his IEP.

Plaintiffs contend that the present set of circumstances falls into an exception, arguing that relative regression necessarily entails absolute regression in the areas of pragmatic language and socialization. But Plaintiffs do not offer any support for their claims. And Defendant is not required to offer complete remediation for Shafi A.'s disabilities. *Klein Indep. Sch. Dist. v. Hoven*, 600 F.3d 390, 396 (5th Cir. 2012). The core of the IDEA is to provide access to educational opportunities and requires only the "basic floor of opportunity," and some meaningful educational benefits more than de minimis, not a perfect education and not the

---

autism, and it makes me wonder if they couldn't see it." A.R. at 1653. This level of speculation does not evidence a lack of training.

maximum of Shafi A.'s potential. The same analysis applies to the issue of skill generalization. Courts have held the IDEA does not require generalization as long as the child is making progress in school. *See Thompson R2-J Sch. Dist. v. Luke P.*, 540 F.3d 1143, 1150 (10th Cir. 2008). The Texas Autism Supplement only requires consideration of generalization skills, which is reflected in the Administrative Record. 19 TEX. ADMIN. CODE § 89.1055(e)(3); A.R. at 998, 2037–39. Considering Shafi A.'s academic, social, and behavioral progress evidenced in the administrative record, and the opinion of the SEHO who had the opportunity to observe witnesses and make credibility determinations, the Court concludes that Shafi A. gained measurable educational benefits sufficient to comply with the IDEA.

Having examined this case under all four of the *Michael F.* factors, the Court concludes by a preponderance of the evidence that LISD's IEP for Shafi A. was reasonably calculated to enable him to receive meaningful educational benefits and thus provided him with a FAPE in accordance with IDEA.

*IEE Analysis*

Plaintiffs contend Defendant failed to meet its obligations with respect to the provision of an IEE for Shafi A. Specifically, Plaintiffs argue the District's FIE was deficient and that Shafi A. was entitled to two separate speech evaluations at the District's expense. Further, Plaintiffs contend the District's cost parameters for reimbursing private evaluations were unreasonable. Defendant contends that two speech evaluations were not appropriate under FAPE, and found Ms. Liberman's evaluation fee unreasonable. Defendant attempted to work with Plaintiffs' chosen IEE providers, and gave Shafi A.'s parents and private evaluators the opportunity to demonstrate unique circumstances for the District to exempt Shafi A. from the District's cost parameters as required by the Fifth Circuit. *See Seth B. v. Orleans Parish Sch. Bd.*, 810 F.3d 961,

980 (5th Cir. 2016). Plaintiffs did not demonstrate unique circumstances, yet Defendant still contacted Shafi A.'s private evaluators in an attempt to negotiate costs. Ms. Liberman refused to provide her credentials or negotiate her fees. Ultimately, Defendant refused to pay for Ms. Liberman's evaluation because the only explanation regarding unique circumstances provided by Plaintiffs was that Shafi A. had autism. Plaintiffs suggest LISD carries the burden of establishing Ms. Liberman's costs[4] were unreasonably excessive, but the burden lies with Plaintiffs when seeking reimbursement for IEEs. *See id.* at 972.

Plaintiffs contend Shafi A. was entitled to two full speech evaluations because LISD itself performs FIEs with two SLPs. Defendant contends it utilizes two SLPs for the same report as part of a comprehensive speech evaluation. One SLP tests regular receptive and expressive language, while the other SLP tests pragmatic language elements. The tests are combined to form a single report. In contrast, Shafi A.'s parents requested LISD cover the cost of two separate reports with considerable overlap, which is not required under IDEA regulations. *See* 34 C.F.R. 300.502(b). Shafi A.'s parents ultimately paid for speech evaluations from both Ms. Liberman and the Ziggurat Group, but the Court finds the District is not required to pay for the evaluations because Plaintiffs have not met their burden in proving LISD's evaluations were deficient and that two extra private speech evaluations were necessary.

Plaintiffs further contend that LISD's cost parameters are not reasonable. But LISD based its maximum fee schedule on research as to customary rates in the area, as determined by a team of special education evaluators. A.R. at 1690. The administrative record establishes that LISD sets its rates at thirty-five percent above the Medicaid rate. Numerous providers in the area

---

[4] The parties disagree on the reasonable cost of an IEE evaluation. Ms. Liberman ultimately charged $1,250 for Shafi A.'s evaluation, which the District found greatly excessive. The Court need not determine whether Ms. Liberman's IEE fee was reasonable, as Plaintiffs failed to demonstrate unique circumstances warranting an exemption from the District's cost parameters.

conduct IEEs at the Medicaid rate, and LISD maintains a list of IEE providers that conduct evaluations at or below the District's maximum fee schedule. A.R. at 1481, 1746. The District allows parents to request an exemption for unique circumstances, which is all that is required under IDEA. *Seth B.*, 810 F.3d at 980; 71 FED. REG. 46,689–46,690 (2006). The District met and exceeded its duty by asking both Shafi A.'s parents and Ms. Liberman for evidence of unique circumstances, which Plaintiffs did not offer. Regardless, LISD ultimately agreed to exceed its cost criteria for the Ziggurat Group's IEE. A.R. at 1183. But Shafi A.'s parents refused because they wanted the District to also pay for Ms. Liberman's evaluation, which both the District and the Ziggurat Group found unreasonable. A.R. at 1166, 1183, 1710. The District attempted to meet with Shafi A.'s parents to resolve the dispute, but Shafi A.'s parents refused and chose to obtain the evaluations at private expense. These evaluations reached similar conclusions as the District's FIE. These conclusions, along with the evidence provided in the administrative record, establish that the District appropriately evaluated Shafi A. The Court finds that Plaintiffs have not met their burden in showing Defendant failed to meet its obligations with respect to the provision of an IEE for Shafi A.[5]

Plaintiffs' final contention with respect to the IEE is that Defendant acted with unnecessary delay in responding to Plaintiffs' request. Specifically, Plaintiffs argue Defendant knew the IEE was sought at public expense and LISD should have objected before the due

---

[5] Under the IDEA regulations, a school district may challenge the request for an IEE by either demonstrating its evaluation was appropriate or the private IEE did not meet agency criteria. 34 C.F.R. § 300.502(b)(5). Defendant takes issue with Ms. Liberman's testing and conclusions. Specifically, Ms. Liberman's instruments were out of standardization and her own test scores concluded Shafi A. had average expressive and receptive language skills. The District also challenges the Ziggurat Group evaluation because Dr. Grossman used incorrect dates and a faulty administration procedure, resulting in false scoring. The Court need not address these issues as the administrative record establishes that LISD provided Shafi A. with an appropriate evaluation.

process hearing. But the Fifth Circuit has held a school district's "delay in 'demonstrating' the IEE's noncompliance should be measured from the submission of the invoices" for the IEE, which was not done until Shafi A.'s parents filed a request for a due process hearing. *Seth B.*, 810 F.3d at 971. The Court finds that Defendant did not act with unnecessary delay in responding to Plaintiffs' request for IEE's.

The Court finds Defendant provided Shafi A. with a FAPE in compliance with the IDEA by developing individualized IEPs, communicating with Shafi A.'s parents and teachers regarding his specific needs, and considering public and private evaluations at multiple ARD meetings. Although there were disagreements with the District and Shafi A.'s parents, the Court finds Defendant complied with the IDEA.

In making this finding, the Court is not only mindful of Plaintiffs' failure to sustain their evidentiary burden but also of the Fifth Circuit's guidance regarding the district court's role in suits under the IDEA. Primarily, Fifth Circuit courts have construed the IDEA to create a presumption in favor of the education plan proposed by the school district, and places the burden of proof on the party challenging it. *Alamo Heights Indep. Sch. Dist. v. State Bd. of Edu.*, 790 F.2d 1153, 1158 (5th Cir. 1986); *Salley v. St. Tammany Parish Sch. Bd.*, 57 F.3d 458, 467 (5th Cir. 1995); *Teague Indep. Sch. Dist. v. Todd L.*, 999 F.2d 127, 132 (5th Cir. 1993). More importantly, the Fifth Circuit has acknowledged that "Congress intentionally left the choice of educational policies and methods where it properly belongs—in the hands of state and local school officials." *White*, 343 F.3d at 377. "The role of the judiciary is not to second-guess the decisions of school officials or to substitute their plans for the education of disabled students with the court's." *R.H. v. Plano Indep. Sch. Dist.*, 607 F.3d 1003, 1010 (5th Cir. 2010).

## CONCLUSION

Based on the foregoing, the Court finds that Plaintiffs failed to satisfy their burden to show that Shafi A.'s IEP was inappropriate under the IDEA. The Court finds the decision of the SEHO is **AFFIRMED**.

Accordingly, is it **ORDERED** that Defendant's Motion for Judgment on the Administrative Record (Dkt. #9) is hereby **GRANTED**; judgment is held in favor of Lewisville Independent School District; and Defendant's request for attorneys' fees and costs of court are **DENIED**.[6]

It is further **ORDERED** that the Plaintiffs' Motion for Judgment on the Administrative Record (Dkt. #10) is hereby **DENIED**; Plaintiffs take nothing on their claims and causes of action against Defendant; and that such claims and causes of action are hereby **DISMISSED** with prejudice.

**SIGNED this 15th day of December, 2016.**

_Amos Mazzant_

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

---

[6] Under the IDEA, it is within the court's discretion to award attorney's fees as part of costs to the school district against the parents or the parents' attorney if it determines that the parents' due process hearing request or a subsequent action is "frivolous, unreasonable, or without foundation"; was litigated "after the litigation clearly became frivolous, unreasonable, or without foundation"; or "was presented for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation." 20 U.S.C. § 1415(i)(3)(B)(i)(II)-(III). The Court finds there is insufficient evidence in the administrative record to support such a finding.